JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant Nicholas Robinson (appellant) appeals his convictions for various drug related offenses and his accompanying 33-year prison sentence. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On December 19, 2006, Cuyahoga County sheriff department detective Marc Bottone and Cleveland police detective Vu Nguyen worked with Brooklyn police detective Chris Frey to plan a controlled purchase of 4.5 ounces, or one eighth of a kilogram, of crack cocaine from appellant. The officers were also working with a confidential informant "Jamal" who was given $3,300 of marked buy money and wired with a digital surveillance device. A cell phone conversation was recorded between Jamal and appellant during which they set up the transaction.
 {¶ 3} Shortly after the phone call, Jamal waited near West 95th and Macon streets in Cleveland, and appellant arrived in his gray SUV with Ohio license plate number DVS 9854. Jamal got in the rear seat of the SUV behind the driver. Although the officers were clandestinely watching Jamal, they could not see into the back of the SUV because it had tinted windows.
 {¶ 4} According to Jamal, appellant was in the driver's seat of the SUV. Jamal and appellant negotiated a $3,250 price for the drugs, which was $50 less than the police anticipated. Appellant took chunks of crack cocaine from a compartment in the center console of the vehicle, weighed 4.5 ounces of the drug using a scale, and put it in a plastic *Page 4 
grocery bag. Jamal noted that appellant had a black 9 mm handgun on his lap during the transaction. Jamal also saw a flash of a silver gun on the female passenger. After Jamal got out of the vehicle, he gave a brownish plastic bag with 124.84 grams of crack cocaine in it and the $50 left over from the buy money to the officers.
 {¶ 5} The officers followed the SUV to 2041 West 93rd
Street in Cleveland. Officer Nguyen, who was parked in an unmarked car, testified that he identified appellant driving the vehicle immediately after the transaction took place. The driver fled before the police surrounded the vehicle; however, a female juvenile, F.G., was in the front passenger seat. A loaded .25-caliber chrome handgun was found in F.G.'s front pocket, and four small baggies containing 23.74 grams of crack cocaine were found on the front seat and in the center console of the vehicle. Officer Nguyen recovered the buy money scattered on the passenger floor of the vehicle. There was also a scale and an envelope with the words "money makers" and several numbers on it. Police recovered a loaded 9 mm Hipoint firearm in the backyard of the 2041 West 93rd Street property. Police did not apprehend appellant that night.
 {¶ 6} According to F.G., on December 19, 2006, she was riding with appellant in his SUV when appellant sold approximately four ounces of crack cocaine to the informant for approximately $3,200. F.G. testified that appellant kept the drugs in the armrest area between the driver's and passenger's seat. F.G. identified the scale and the plastic bag that were used during the transaction that night. F.G. also identified the envelope found in the vehicle, stating that she wrote names and numbers on it to keep track of how much money appellant made from selling crack cocaine. *Page 5 
 {¶ 7} F.G. further testified that after the transaction, appellant pulled the SUV into the nearby driveway of Latiha Davis, who is the mother of appellant's children, and ran, "[b]ecause he knew he got set up." Immediately after this, the police arrived and arrested F.G.
 {¶ 8} On January 22, 2007, police arrested appellant when he reported to his parole officer. On February 1, 2007, appellant was charged with possession of crack cocaine exceeding 100 grams, in violation of R.C. 2925.11; two counts of trafficking in crack cocaine exceeding 100 grams, in violation of R.C. 2925.03; two counts of trafficking in crack cocaine 10 to 25 grams, in violation of R.C. 2925.03; and having a weapon while under disability, in violation of R.C. 2923.13. He was also charged with major drug offender, firearm, and committing-an-offense-within-100-feet-of-a-juvenile specifications.
 {¶ 9} On May 8, 2007, a jury found appellant guilty of all counts, and the court sentenced him to 33 years in prison.
 II. {¶ 10} In his first assignment of error, appellant argues that "the trial court erred and abused its discretion in denying appellant's motion for a mistrial after extensive testimony was offered about the wrong drugs and erred in explaining the mistake to the jury."
 {¶ 11} In the instant case, the state's first witness was Cleveland police officer Scott Miller, who testified about evidence bags of heroin and marijuana found as evidence at the scene of a crime. Subsequent to Miller's testimony, however, the prosecutor realized that this was evidence from a different case and had nothing to do with appellant. The mistake *Page 6 
was traced to the Cleveland Police Department, who inadvertently used the same report number for these drugs as the crack cocaine that appellant is charged with possessing and trafficking.
 {¶ 12} The prosecutor requested that the court strike the testimony and give the jury a curative instruction. Defense counsel, on the other hand, requested a mistrial, arguing that appellant was prejudiced by testimony relating to drugs that were not evidence in the instant case. The court denied defense counsel's request for a mistrial, struck the testimony regarding the wrong drugs, explained the mistake to the jury, and gave them instructions to disregard that evidence and testimony.
 {¶ 13} "The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." State v. Treesh (2001),90 Ohio St.3d 460, 480. It is only necessary to grant a mistrial when a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127. "Curative instructions have been recognized as an effective means of remedying errors or irregularities which occur during trial." State v.West, Cuyahoga App. No. 82579, 2003-Ohio-7067. Additionally, a jury is presumed to follow the court's cautionary or curative instructions.State v. Loza (1994), 71 Ohio St.3d 61.
 {¶ 14} In the instant case, appellant argues that "[t]he trial court usurped the role of the prosecutor" by explaining the mistake to the jury. Appellant further argues that the state should have corrected its own mistake by calling witnesses to explain the mixup, and the jury should have been allowed to consider all the testimony. Appellant cites no legal authority to *Page 7 
support this argument. A careful review of Ohio case law shows no cases directly on point with this issue. Given the evidence against appellant, which will be analyzed thoroughly infra, we cannot say that a fair trial was not possible after the state's mistake. Nor can we say that the court abused its discretion by instructing the jury to disregard the incorrect evidence. Appellant's first assignment of error is overruled.
 III. {¶ 15} In his second assignment of error, appellant argues that "the trial court erred and abused its discretion in closing the courtroom to the public during the testimony of the informant in violation of appellant's Sixth Amendment rights."
 {¶ 16} An accused has a constitutional right to a public trial.Sixth Amendment to the United States Constitution; Section 10, Article I, Ohio Constitution. "[T]he right to a public trial is not absolute and an order barring spectators from observing a portion of an otherwise public trial does not necessarily introduce error of constitutional dimension. * * * On appeal from such order, the reviewing court is to determine whether the lower court abused its discretion." State v. Brown (Nov. 25, 1998), Cuyahoga App. No. 73060 (internal citations omitted). Courtrooms may be closed if there is "persuasive evidence of serious risk to an important interest * * *." State v. Washington (2001),142 Ohio App.3d 268, 271 (citations omitted).
 {¶ 17} In Waller v. Georgia (1984), 467 U.S. 39, 46, the United States Supreme Court set forth the following factors to determine the necessity of courtroom closure: "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be *Page 8 
prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."
 {¶ 18} In the instant case, the court conducted a Waller hearing, and made the following findings: 1) The informant was referred to by a false first name; no last name and no contact, employment or residency information was known; the informant and/or his family had been threatened via phone calls from unidentified females to not testify against appellant; the informant's demeanor had changed since receiving these calls; and the informant was hiding in the courthouse when he was scheduled to meet with one of the police officers prior to testifying; 2) The closure would be limited to the informant's testimony; 3) "[T]he only reasonable alternative that the Court could consider in this case would be having the informant testify outside of the presence of anyone," however, that was not feasible because appellant did not waive his right to confront his witnesses; and 4) "There is an overriding concern to protect the safety of an informant testifying in court"; and the informant's "safety is indeed in peril," as shown by the correlation between the escalated threats against him and his changing demeanor.
 {¶ 19} Taking into consideration that the informant received telephone threats immediately prior to his testimony, and the court closed the courtroom to the public for his testimony only, we cannot say that the court abused its discretion.
 IV. *Page 9 {¶ 20} In his third assignment of error, appellant argues that "the trial court erred in permitting a police officer to testify as to oral statements made by appellant to the officer at the time of which appellant was represented by counsel and which statements were in connection with plea negotiations."
 {¶ 21} Evid. R. 410 governs the inadmissibility of plea statements, and it states that evidence of the following is inadmissible at trial:
 "(1) A plea of guilty that later was withdrawn;
 (2) A plea of no contest or the equivalent plea from another jurisdiction;
 (3) A plea of guilty in a violations bureau;
 (4) Any statement made in the course of any proceedings under Rule 11 of the Rules of Criminal Procedure or equivalent procedure from another jurisdiction regarding the foregoing pleas;
 (5) Any statement made in the course of plea discussions in which counsel for the prosecuting authority or for the defendant was a participant and that [does] not result in a plea of guilty or that result in a plea of guilty later withdrawn."
 {¶ 22} In the instant case, appellant took the stand in his own defense and testified that he had been rehabilitated since he was released from prison. On rebuttal, the state introduced evidence to show that a month prior to trial, appellant initiated a conversation with Detective Bottone in which appellant provided first names, descriptions of vehicles, and a cell phone number for people who were involved in trafficking cocaine. Appellant requested that he be released from jail "to deal with those individuals" for him to be of further assistance to the police. Detective Bottone told appellant that, given his record, that would be impossible. *Page 10 
 {¶ 23} None of the Evid. R. 410 factors apply to the situation at hand. It is unclear which factor appellant argues the statements in question fall under, thus we address them all. First, evidence of a guilty or no contest plea was not brought up during Detective Bottone's testimony, therefore, factors one, two, and three do not apply. Next, evidence of Crim. R. 11 proceedings was not discussed during trial, therefore, factor four does not apply. Finally, neither the prosecutor nor defense counsel was a participant in the conversation, therefore, the fifth and final factor does not apply.
 {¶ 24} We rule that this conversation does not rise to the level of a plea discussion for the purpose of Evid. R. 410. As this testimony was offered in rebuttal after appellant opened the door to his good character, we find no error with its admissibility, and appellant's third assignment of error is overruled.
 V. {¶ 25} In his fourth assignment of error, appellant argues that his "convictions should be reversed due to the cumulative errors which occurred during trial." Specifically, appellant argues that the alleged errors outlined in his first three assignments of error trigger the cumulative error doctrine and are grounds for reversal.
 {¶ 26} In State v. Garner (1995), 74 Ohio St.3d 49, 64, the court held that pursuant to the cumulative error doctrine "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *Page 11 
 {¶ 27} In the instant case, as discussed above, we do not find multiple instances of harmless error. Therefore, the cumulative error doctrine does not apply, and appellant's fourth assignment of error is overruled.
 VI. {¶ 28} In his fifth and final assignment of error, appellant argues that "the trial court erred when it imposed an additional three year prison sentence in accordance with R.C. 2941.145 for the firearm specification on the charge of having a weapon while under disability."
 {¶ 29} Pursuant to R.C. 2929.14(D)(1)(e), the court shall not impose an additional prison term for a firearm specification for the offense of having a weapon under disability, unless the following applies:
 "(i) The offender previously has been convicted of aggravated murder, murder, or any felony of the first or second degree.
 (ii) Less than five years have passed since the offender was released from prison or post-release control, whichever is later, for the prior offense."
See, also, R.C. 2941.145 (firearm specifications) and R.C. 2923.13
(having a weapon while under disability).
 {¶ 30} In the instant case, appellant was convicted of aggravated robbery with a one-year firearm specification, in violation of R.C. 2911.01(C), which is a first degree felony. Appellant served four years in prison for this conviction and was released in 2005. The instant trial took place in early May 2007, which is less than five years after appellant was released from prison. *Page 12 
 {¶ 31} Accordingly, the court did not err when it sentenced appellant, and his final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., CONCURS; MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY
 *Page 1